**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

JESSIE MARIE CLAIBORNE                                         PLAINTIFF

v.                                          CIVIL ACTION NO. 3:07-CV-277-HTW-LRA

MISSISSIPPI BOARD OF PHARMACY;
LELAND "MAC" MCDIVITT, INDIVIDUALLY; AND
JOHN DOES 1-25                                                 DEFENDANTS

## ORDER GRANTING SUMMARY JUDGMENT

       This employment discrimination case is before this court on a motion for

summary judgment [**docket no. 21**] filed by defendants, Mississippi Board of Pharmacy

("Board") and Leland "Mac" McDivitt, pursuant to Fed. R. Civ. P. 56(a).[1]  Defendants

also have filed a motion to strike plaintiff's exhibits to her response to their motion for

summary judgment [**docket no. 28**].  For the reasons which follow, this court finds

defendants' motion for summary judgment well-taken and should be granted. This court

denies defendants' motion to strike.

       Plaintiff filed her lawsuit in the First Judicial District of the Circuit Court of Hinds

County, Mississippi, seeking the protection of federal law against employment

discrimination and retaliation.  Her complaint invoked Title VII of the Civil Rights Act of

---

       [1] Fed. R. Civ. P. 56 states in pertinent part:
(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT.
A party may move for summary judgment, identifying each claim or defense—or the part of
each claim or defense—on which summary judgment is sought. The court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law. The court should state on the record the
reasons for granting or denying the motion.

1964, Title 42 U.S.C. §2000e-2, *et seq.*;[2] Title 42 U.S.C. §1981;[3] and Title 42 U.S.C. § 1983.[4] Plaintiff's complaint also alleges causes of action under state law for the tort of outrage, intentional and/or negligent infliction of emotional distress, retaliation for whistle blowing under Miss. Code Ann. § 25-9-171 *et seq.*,[5] and for punitive damages. Defendants removed this lawsuit to federal court, citing this court's federal question jurisdiction as codified by Title 28 U.S.C. § 1331.[6]

## I. Background

The following facts, unless otherwise noted, are taken from the plaintiff's complaint or her statements at oral argument. Plaintiff Jesse Marie Claiborne ("Claiborne") began her employment with the Mississippi Board of Pharmacy ("Board") in August of 2003 as an Administrative Assistant IV, and later was promoted to Administrative Assistant VII. Her duties included answering the telephone, processing applications, administering tests, filing, issuing licenses, and typing.

---

[2] Title 42 U.S.C. § 2000e *et seq.*, prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin.

[3] Title 42 U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).

[4] Title 42 U.S.C. § 1983 prohibits deprivation of rights by those who act "under color of law."

[5]Miss. Code Ann. § 25-9-173 provides in pertinent part:
(1) No agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath.

[6] Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States."

On June 27, 2006, Executive Director, Leland "Mac" McDivitt ("McDivitt"), interviewed a candidate for the position of Bureau Director II.  The position had not been posted, and plaintiff did not know of the position prior to the interview.  When plaintiff questioned McDivitt about the position, he told her the position required either nine years of service with the Board and a bachelor of science degree or six years of service with the Board and a masters degree.  Plaintiff had thirteen years of service with the Board and a bachelor of science degree.

Plaintiff applied for the position through the State Personnel Board, despite being told she was not qualified, and scored a "100" on the qualification test.  She was placed on the list of eligible candidates.  Defendant McDivitt, never interviewed her for the position.  The only candidates considered for the job were a white female and a white male.  McDivitt selected the white male, Greg Abadie, for the position.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on July 6, 2006. After she filed her EEOC charge, she was demoted and lost benefits such as the ability to earn comp time or to work a "compressed" work schedule.  Her employer has never explained her demotion or loss of benefits.  Plaintiff filed two additional charges with the EEOC on September 22, 2006, and October 21, 2006, for retaliation.  She left her employment with the Board in March of 2008, to work for another state agency.

Plaintiff filed her suit alleging discrimination and retaliation, as well as civil violations under state law, on April 2, 2007, in the First Judicial District of the Circuit Court of Hinds County, Mississippi.  Defendants removed the lawsuit on May 17, 2007, to this federal forum.

3

**II.  Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c);  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Summary judgment allows a defendant to test the sufficiency of plaintiff's pleadings and evidence to determine if the matter should go forward.  The rules and jurisprudence caution the court not to judge or weigh the evidence, but to apply the law to the undisputed facts to determine if the claims have sufficient underpinning to advance to trial.  If material issues of fact are raised by the evidence in the record, these issues should be addressed by the "trier of fact," in a trial.

**A.  Title VII**

The plaintiff has sued for both race discrimination and retaliation under Title VII. The court's first inquiry in this matter is whether defendants may be considered employers under Title VII. To be an employer as defined by Title VII, the defendant must have "fifteen or more employees" during the period of time in question.  Title 42 U.S.C. § 2000e(b); *Arbaugh v. Y & H Corp.*, 546 U.S. 126, 503-504, 126 S.Ct. 1235, 1238-39, 163 L.Ed2d 1097 (2006).  "[T]he employee-numerosity requirement relates to the substantive adequacy of [the plaintiff's] Title VII claim." *Arbaugh*, 546 U.S. at 504.

When a private employer has less than fifteen employees, but said private employer is a subdivision of a larger entity, the court should examine the relationship to

determine whether in the aggregate, the combination under the single employer test should be considered a covered employer under Title VII.  *See Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983).  Under the *Trevino* "single employer" test the court weighs four factors to determine if the enterprise should be aggregated for purposes of meeting the employee-numerosity requirement of Title VII.  These factors are:  "1) interrelation of operations; 2) centralized control of labor relations; 3) common management; and 4) common ownership or financial control.  *Trevino*, 701 F.2d at 404. The second factor of this test is considered the most important.  *Id*.

The Fifth Circuit has indicated that the *Trevino* "single employer" test does not apply to public or governmental employers.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007)(stating "our prior case law suggests that a government employer . . . may not be considered part of an integrated enterprise under the *Trevino* framework").  The Fifth Circuit, in *Garrett-Woodberry v. Miss. Bd. Of Pharm.*, 300 Fed.Appx. 289, 291 (5th Cir. 2008)(unpublished), specifically held that this test does not apply to the Mississippi Board of Pharmacy, stating "[t]he *Trevino* court noted that we have declined to apply this 'single employer' test to governmental subdivisions because it was developed for application to private entities. [. . .] Thus, it seems clear that the 'single employer' test should not be applied here, as the Board is a state agency and is thus a governmental subdivision."  *Id*.

The Board has provided an affidavit from Frank Gammill, the current Board Executive Director, stating he has worked at the agency since 1997.  In his affidavit, Frank Gammill states that the Board is made up of seven members appointed by the

Governor, with at least one appointed from each congressional district.  Since 1997, the Board has had less than 15 employees.  In July of 2006 and in October of 2006, the period relevant to this lawsuit, the Board had nine employees.

At oral argument, this court questioned whether the board members could be counted as employees for the purposes of Title VII.  Defendants explained that the seven board members serve as volunteers, receive no salary for their service, and maintain independent employment outside of their Board service.  This court is persuaded by the jurisprudence and arguments offered by defendants, that the Mississippi Board of Pharmacy is not an employer under the definition in Title VII.

If the Board itself does not meet the Title VII definition of employer, it would logically follow that the individual defendant, McDivitt, could not qualify as an employer. Further the Fifth Circuit has held that individual supervisors may not be held liable as "employers" under Title VII in their individual or official capacity, stating:

> While Title VII's definition of the term employer includes "any agent" of an employer, Congress's purpose was merely to import *respondeat superior* liability into Title VII. Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity. Under the reasoning of our case law interpreting Title VII, the individual Defendants cannot be liable to [plaintiff] in their individual or official capacities [. . .].  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448-449 (5th Cir. 2002)(comparing analysis of Louisiana state discrimination statutes to analysis of Title VII claims)(citations omitted).

In rare instances, the Fifth Circuit has applied Title VII liability to an individual in his official capacity if that individual has sole authority for hiring, firing, and promotions. *Oden v. Oktibbeha County*, 246 F.3d 458, 465 (5th Cir. 2001) (Fifth Circuit affirmed judgment against a Sheriff in his official capacity because the Sheriff was an elected official who "was **solely** responsible for hiring, promoting, and establishing the deputies'

6

wages.")(emphasis added).  The Fifth Circuit has declined to assign Title VII employer liability to employees in their individual capacity.  *See Id.*

Plaintiff failed to provide any facts or evidence indicating that McDivitt should be held liable as an employer under Title VII.  At oral argument she indicated that when she was hired by the Board as an Administrative Assistant, she interviewed with the entire Board, and the hiring decision was not made by McDivitt alone.  This court, therefore, finds insufficient evidence to assign employer liability under Title VII to McDivitt.

### B.  Title 42 U.S.C. § 1981

Plaintiff has sued for race discrimination under Title 42 U.S.C. § 1981.[7]  There is no private right of action under § 1981 against a public employer.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir. 2001).  To achieve redress for discrimination or retaliation claims against a public employer, a plaintiff must sue under Title 42 U.S.C. § 1983 for deprivation of rights "under color of law". 246 F.3d at 463-64.

### C.  Title 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a civil remedy to individuals for deprivation of

---

[7] Title 42 U.S.C. § 1981 provides in pertinent part:
(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

rights by any *person* acting "under color of" law.[8]   States and state subdivisions are

protected by the Eleventh Amendment to the Constitution against suit. *See Monell v.*

*Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978).  The Board, as a state

agency created by the Mississippi legislature, is immune from suit under Title 42 U.S.C.

§ 1983.  *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

Defendant McDivitt claims entitlement to qualified immunity from plaintiff's

charges of discrimination under Section 1983.  Executive officers sued in their individual

capacity for damages under § 1983 may be entitled to qualified immunity. *Procunier v.*

*Navarette*, 434 U.S. 555, 561-62, 98 S.Ct. 855, 859-60, 55 L.Ed.2d 24 (1978).

"The burden is on the plaintiff to overcome a defendant's defense of qualified

immunity. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).  To succeed, a

plaintiff must satisfy a two-prong test: 1) he must allege the violation of a clearly

established law; and 2), show that the defendant's conduct was not "objectively

reasonable." *Id*; *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815-16

(2009)

The Fifth Circuit has held that acts are "objectively reasonable unless *all*

reasonable officials in the defendant's circumstances would have then known that the

defendant's conduct violated the United States Constitution or the federal statute as

alleged by the plaintiff." *Thompson v. Upshur County, TX,* 245 F.3d 447, 457 (5th Cir.

---

[8] Title 42 U.S.C. § 1983 states in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage,
of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
citizen of the United States or other person within the jurisdiction thereof to the deprivation of
any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

2001) (emphasis in original).

Plaintiff did not respond to defendants' motion for summary judgment with respect to this claim. She also has provided no evidence other than the allegations in her complaint to support this claim.  Her allegations in the complaint are that she was not promoted, despite her eligibility for such promotion.  Further she says that only two candidates were considered for the job – a white male and a white female – and that McDivitt hired the white male into the position she sought.

When asked at the hearing whether she would like to present more evidence regarding this claim, plaintiff said that McDivitt was no longer employed by the Board, and she saw no reason to pursue the claim.

Because the plaintiff has failed to provide any support beyond allegations to support her claim, and wholly ignored defendant's claim of qualified immunity, this court dismisses the § 1983 claim against McDivitt.

**D. State Law Claims**

1.  "Tort of Outrage" and Intentional Infliction of Emotional Distress

Plaintiff has asserted tort claims for "outrage" and intentional infliction of emotional distress based on the defendant's failure to promote her, the negative atmosphere in the office, and her feeling of insecurity in her employment while working at the Board.

A claim of intentional infliction of emotional distress ("IIED") under Mississippi law requires a defendant's conduct to be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Nuwer v. Mariner Post-Acute*

9

*Network*, 332 F.3d 310, 316 (5th Cir. 2003)(citations omitted).  Because the standard for

an IIED claim is so difficult to meet, this tort "will ordinarily not lie for mere employment

disputes."   *Id*.

Plaintiff has provided no evidence of outrageous conduct by McDivitt or others at

the Board.  In her response to defendants' motion for summary judgment, plaintiff

provided no arguments or evidence to support any of her state law claims.  The

defendants provided the following excerpts from plaintiff's deposition addressing these

claims.

Q:   Have you had a chance to look at Count 3 of your complaint (claim for the Tort of
      Outrage)?
      . . .
A:   I never worked in conditions like that before, around a[n] individual that
      would do–you could see in the office that they would do things to get back
      at employees.  I thought that in America, you have–we have gotten over
      this type of environment; racism, but it–but you haven't.  I mean, it's still
      alive.  It's still going.
      And I–and I never seen anybody–because I could see some of the things
      he would say or do on the phone to other people he'll talk to, and I was,
      like, now . . . and I wouldn't say nothing, I would just sit there.  And no one
      in the office would like for him to–for Mr. Leland McDivitt for–to get mad at
      them.
      . . .
Q:   Well, getting back to this tort of outrage.  Is your claim–is this tort of
      outrage based on your allegations of race discrimination or is it something
      else?
A:   It's race.
      . . .
Q:   Okay.  You also claim intentional infliction–intentional and/or negligent infliction
      of emotional distress.
A:   Right.
Q:   Is that also based on your claims of race discrimination, or is that based on
      something else?
A:   It's based on race. It's how you treat a individual in the office.  I was stressed,
      very stressed, the way they did you in the office. If I was to type a memo and
      give it to them of a discussion or a claim, you can see it floating around in all the
      other compliance's hands in the office. You know, you would–"Good morning."
      The people wouldn't say anything, just walk on past you.  You know, it–you could

just feel the tension and the hatred in the atmosphere.

Q:     Okay. Anything else about the–your employment that causes you to say that it was–caused emotional distress?

A:     It did. And, you know, people wouldn't–they just wouldn't come around you, or shun you off or–you know, I would approach them in a very professional manner, because I was trying to get my job done. And it was a lot of, you know–because at the time, you know, you had the television station coming in the office. A lot was–and the Clarion-Ledger, you know. So it was–it was–it was stressful.
       . . .

Q:     Okay. What behavior do you claim has been–by the–by the Board of Pharmacy do you claim has been malicious, willful, wanton, grossly careless, indifferent, or reckless?
       . . .

A:     Well, you–it's hard to go to a job or sit at a job and trying to work, and you don't know if you going to have a job or not.  You know, people–you know, you're there working but you don't know when they going to terminate you.  They had already tried to terminate one employee, and I sit there and I had to carry her home, which I did–I did because the supervisor told me to do it at the time when they–

. . .
       –terminated her.  Penny Woodberry, when they terminated her.  And I had to drive her home. And–they terminated her at one point.  But–and I was, like, well, they getting rid of her, then I'm next, you know. It was–it was hard.
       And then when people telling you you're not doing your job, and you were doing your job, and then when people–I had to file a grievance against them because they had a pharmacist–well, a student who became a pharmacist saying something I didn't do.  And I–I worked and processed everything to the fullest of my ability, because I know those pharmacists need the work and they need their money.

. . .
       And when people start doing stuff like that, it makes you nervous, obnoxious, you've got to look over your back. You don't know what they coming at you next with, you know.  Claiborne depo. at 53-58.

The facts asserted by plaintiff do not rise to the level of outrageous conduct necessary

to support these tort claims.

       2.  Negligent Infliction of Emotional Distress

       Mississippi Workers' Compensation statutes provide an "exclusive" remedy for

negligence claims by employees against their employers. Miss. Code Ann. § 71-3-1.[9]

*See Griffin v. Futorian Corp.*, 533 So.2d 461 (Miss. 1988).  This claim is barred by

Mississippi Workers' Compensation law.

> ### 3.  State Whistleblower claim - Miss. Code Ann. § 25-9-171 *et seq.*[10]

---

[9] Miss. Code Ann. § 71-3-9 states:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

[10] Miss. Code Ann. § 25-9-173. Acts prohibited; information to investigators; reprisal or retaliatory action; remedies
(1) No agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath.
(2) Any person who is a whistleblower, as defined in Section 25-9-171, and who as a result of being a whistleblower has been subjected to workplace reprisal or retaliatory action, is entitled to the remedies provided under Section 25-9-175. For the purpose of this section, "reprisal or retaliatory action" means, but is not limited to:
    (a) Unwarranted and unsubstantiated letters of reprimand or unsatisfactory performance evaluations;
    (b) Demotion;
    (c) Reduction in pay;
    (d) Denial of promotion;
    (e) Suspension;
    (f) Dismissal; and
    (g) Denial of employment.
(3) An employee who has filed a valid whistleblower complaint may not recover the damages and other remedies provided under Section 25-9-175 unless the dismissal or adverse action taken against him was the direct result of providing information to a state investigative body.
(4) Nothing in this section prohibits a governmental entity from making any decision exercising its authority to terminate, suspend or discipline an employee who engages in workplace reprisal or retaliatory action against a whistleblower.
(5) A governmental entity is not precluded from taking any action in accordance with established personnel policies against an employee who knowingly and intentionally provides false information to a state investigative body.

The Mississippi whistle blower statutes protect employees from retaliation when they report improper governmental action to "a state investigative body." See Miss. Code Ann. § 25-9-173; *Harris v. Miss. Valley State Univ.*, 873 So.2d 970 (Miss. 2004). "A state investigative body" is defined in the statute as the "Attorney General of the State of Mississippi, the State Auditor, the Mississippi Ethics Commission, the Joint Legislative Committee on Performance Evaluation and Expenditure Review or any other standing committee of the Legislature, or any district attorney of the State of Mississippi." *Harris*, 873 So.2d at 987 (citing Miss. Code Ann. § 25-9-171(g)). The whistle blower statutes do not apply to employees who do not report the alleged employer misconduct to one of the agencies or state bodies named in the statute. *Id.*

Claiborne has provided no summary judgment evidence that she reported misconduct by the Board to any of these state agencies.  In her deposition, Claiborne alleges that the Board misused funds and acted improperly in other ways, but admits that she never reported this misconduct, stating "I just sat there and watched and observed."  Claiborne depo. at 62.  When asked about this claim at oral argument, the plaintiff stated that she conceded it.

For the reasons state above this court dismisses plaintiff's claims under the Mississippi "whistle blower" statutes.

### 4.  Punitive Damages, Miss. Code Ann. § 11-46-15(2)

This court dismisses plaintiff's claims for punitive damages because all substantive claims which could provide an anchor for these damages have been

dismissed.  Further, the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-15(2),[11]

bars assessment of punitive damages against state agencies.

### III. Motion to Strike Exhibits A, B, C, and E

Defendants argue that plaintiff, in response to their motion for summary

judgment, has provided unauthenticated documents, which are not admissible.  These

exhibits do not meet the requirements of Rule 56, say defendants, and may be

disregarded by the court. Fed. R. Civ. P. 56(e)[12]; *King v. Dogan*, 31 F.3d 344, 346 (5th

---

[11] Miss. Code Ann. § 11-46-15(2) states:
No judgment against a governmental entity or its employee for any act or omission for which
immunity is waived under this chapter shall include an award for exemplary or punitive
damages or for interest prior to judgment, or an award of attorney's fees unless attorney's fees
are specifically authorized by law.

[12] Fed.R.Civ.P. 56 states in pertinent part:
(c) PROCEDURES.
  (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely
  disputed must support the assertion by:
      (A) citing to particular parts of materials in the record, including depositions, documents,
      electronically stored information, affidavits or declarations, stipulations (including those
      made for purposes of the motion only), admissions, interrogatory answers, or other
      materials; or
      (B) showing that the materials cited do not establish the absence or presence of a
      genuine dispute, or that an adverse party cannot produce admissible evidence to
      support the fact.
  (2) *Objection That a Fact Is Not Supported by Admissible Evidence.*
  A party may object that the material cited to support or dispute a fact cannot be presented in
  a form that would be admissible in evidence.
  (3) *Materials Not Cited.* The court need consider only the cited materials, but it may
  consider other materials in the record.
  (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion
  must be made on personal knowledge, set out facts that would be admissible in evidence,
  and show that the affiant or declarant is competent to testify on the matters stated.
. . .
(e) FAILING TO PROPERLY SUPPORT OR ADDRESS A FACT. If a party fails to properly
support an assertion of fact or fails to properly address another party's assertion of fact as
required by Rule 56(c), the court may:
  (1) give an opportunity to properly support or address the
  fact;
  (2) consider the fact undisputed for purposes of the motion;

Cir. 1994).  The disputed documents include a printout from the United States Equal Employment Opportunity Commission's website of the text of Title VII, the text of the entire Civil Rights Act of 1991, a chapter from the Mississippi State Personnel Board Policy and Procedures Manual, and an act from the Mississippi 2003 legislative session addressing budgets for state agencies for fiscal years 2003 and 2004.

The court has determined that all of plaintiff's claims should be dismissed. These documents do not change or affect the court's ruling.  Defendants' motion to strike is therefore denied.

## IV.  Conclusion

For the reasons explained above, defendants' motion for summary judgment [**docket no. 21**] is granted and defendants' motion to strike [**docket no. 28**] is denied.

Plaintiff's lawsuit is dismissed.  The court will enter a final judgment in accordance with the local rules.

**SO ORDERED, this the 22nd day of August, 2011.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:07-CV-277-HTW-LRA
Order Granting Summary Judgment

---

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
(4) issue any other appropriate order.